UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OMAR HERNANDEZ HIDALGO,

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-04755-DJC-SCR

RELEASE ORDER

A# 245-275-291

Petitioner is an immigrant detainee who received a bond hearing before an Immigration Judge in response to a district court's prior order. At the bond hearing, the Immigration Judge denied bond, concluding that Petitioner posed a danger to the community. Petitioner now files the present habeas petition challenging, inter alia, the constitutional adequacy of the bond hearing he received. (FAP (ECF No. 11).) For the reasons discussed below, the Court grants the Petition as to Count 4 and orders Petitioner's release from custody.

**BACKGROUND**

Petitioner first came to the United States in 2023. (Opp'n at 2 (ECF No. 14).) He was detained near the border and released with instructions to appear in immigration court. (*Id.*) Petitioner was detained by ICE following contact with the police.

Respondents state that "ICE re-detained Petitioner following an arrest related to an altercation with another individual on April 2, 2026." (Opp'n at 2). Petitioner states that "he was attacked and injured and immediately called the police. When the police arrived, they took both the assailant and [Petitioner] into custody. No charges were filed, but ICE agents detained [Petitioner] after he was released by local authorities." (FAP at 2.)

While detained in Arizona, Petitioner submitted a habeas petition in the District of Arizona; shortly after, Petitioner was transferred to the California City Detention Center. (Opp'n at 1.) On June 22, 2026, he filed a second habeas petitioner with this Court, and the Court appointed counsel. (Pet. (ECF No. 1); Order (ECF No. 4).) On July 1, 2026, Petitioner's habeas petition in the District of Arizona was granted in part, and Respondents were ordered to grant Petitioner a bond redetermination hearing within seven days or release Petitioner from custody. *Omar Hernandez Hidalgo v. Luis Rosa Jr., et al.*, No. 2:26-cv-03720-PHX-DJH (JFM) (D. Ariz). On July 7, 2026, "officials escorted him to a room for a video hearing before the immigration court. He vaguely recalls being told that the proceeding concerned bond." (FAP at 3.) At the start of Petitioner's bond hearing, his counsel made an oral motion to withdraw because, despite being entered into both immigration and custody proceedings, he had not been "contracted" for the bond hearing. (Digital Audio Recording ("DAR").) The Immigration Judge granted the withdrawal. (*Id.*) After a brief bond hearing wherein Petitioner proceeded pro se, the Immigration Judge found that Petitioner posed a danger to the community, basing his decision on the evidence presented by the Department of Homeland Security (DHS) and Petitioner's lack of evidence rebutting their claims. (*Id.*) Therefore, the Immigration Judge denied bond.

On July 31, 2026, Petitioner submitted a First Amended Petition for Writ of Habeas Corpus before this Court. (FAP.) The briefing on this matter is now complete. (FAP; Opp'n; Reply (ECF No. 16).)

///

**DISCUSSION**

While an IJ's discretionary decision to deny bond is not subject to judicial review pursuant to 8 U.S.C. § 1226(e), a district court may review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011). "Although [the court] lack[s] jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [the court] may review whether the bond hearing was fundamentally unfair." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

Here, Petitioner claims that "the bond hearing" he was provided "did not comply with due process and lacked fundamental fairness." (FAP at 19.) He states that "[h]e did not have any opportunity to find legal representation; he did not have any opportunity to prepare for the hearing, and he did not have an opportunity to present evidence." (*Id.* at 21.) The Court agrees that Petitioner suffered two distinct violations of due process, the first stemming from the denial of his right to present evidence and the second from the denial of his right to seek counsel at no expense to the government. Both deprivations of process prejudiced Petitioner's proceedings. *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) (holding in the context of due process in deportation proceedings that a noncitizen must show both a due process violation and that "the outcome of the proceeding may have been affected by the alleged violation.")

The Court begins with Petitioner's right to present evidence on his behalf. "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 350 (1976) (internal quotations omitted). Because Petitioner did not have notice of his attorney's withdrawal or notice of the bond hearing, he did not have the opportunity to prepare and present evidence. *Parajuli v. Warden, California City ICE Det. Facility,* No. 1:26-cv-03125-TLN CKD P, 2026 WL 1707076, at *3 (E.D. Cal. June 12, 2026), *report and recommendation adopted by* No. 1:26-cv-03125-TLN-

CKD, 2026 WL 1833477 (E.D. Cal. June 25, 2026) ("[P]etitioner's right to a meaningful opportunity to put forward evidence as to whether he is eligible for release was compromised by insufficient notice of the ordered hearing and the immigration judge's failure to grant petitioner more time to remedy the lack of proper notice.") As a result, he was deprived of a sufficient opportunity to put forward evidence, undermining the fundamental fairness of his bond hearing and depriving him of due process. *Magatte v. Lowe*, No. 4:26-cv-00597, 2026 WL 1454116, at *3 (M.D. Pa. May 22, 2026) (holding that Petitioner's "bond hearing was constitutionally defective because the IJ did not provide Magatte with a reasonable opportunity to present evidence on his own behalf.")

The prejudice caused by this due process deprivation is clear from the record. After the Immigration Judge asked DHS for their position on bond, DHS stated that Petitioner was dangerous and a flight risk, pointing, inter alia, to an arrest shown in Petitioner's I-213. (DAR.) The Immigration Judge then asked Petitioner:

> IJ: To the respondent, were you arrested for domestic violence offense?
>
> Petitioner: That's not correct, Your Honor. Can you give me the word?
>
> IJ: Sir, I'm just asking you the questions right now. I need you to answer my questions. Were you arrested for domestic violence? Yes or no.
>
> Petitioner: No.
>
> IJ: What were you arrested for?
>
> Petitioner: So, that day my stepson assaulted me, and I called the police because I was afraid. At that moment, I thought calling the police will help me, but it got me arrested. I have the police report, and that night I went to the hospital.
>
> IJ: You, sir, you're the one who's been charged here. The documents state that you were arrested and that you have been charged. And that's why you're in custody by immigration, is it not?

> Petitioner: Yes, but no, I did not do any domestic violence. I was calm, and my wife, she's a witness of that.
>
> IJ: Well, sir, I don't have any witnesses here, nor do I have any documents. I don't see your wife on Webex. Nor any other family member to corroborate your story.
>
> Petitioner: Yes, because I was not expecting to have a court hearing today. No one notified me.
>
> IJ: Well, sir, you're the one who requested this bond hearing by habeas. So you knew: you're the one who requested this. So why wouldn't you file the evidence?

(DAR.) The IJ then found that "based on the evidence that has been submitted, specifically here, only by the Department of Homeland Security, that respondent is a danger to the community. The documentary evidence in this case indicates that he's the one who has been charged." (*Id.*) Petitioner testified that he was "not expecting" to have a court hearing and that "no one notified" him. (DAR.) Given both this lack of notice of the hearing and the unexpected withdrawal of his attorney, Petitioner reasonably could not prepare evidence, including potentially dispositive evidence about his single prior arrest that could rebut DHS' argument that Petitioner poses a danger to the community.

The deprivation of Petitioner's right to present evidence is not cured by the fact that, as the Immigration Judge pointed out, Petitioner was "the one who requested this bond hearing by habeas." (DAR.) The Ninth Circuit has recognized that pro se noncitizens "often lack the legal knowledge to navigate their way successfully through the morass of immigration law" – a morass thickened here by the complicated interplay of federal habeas law and the immigration system. *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002). The submission of a pro se habeas where one potential remedy is bond does not constitute adequate warning of the bond hearing for the purposes of Petitioner's due process right to present evidence on his behalf. That is particularly true where Petitioner had not yet received a copy of the order granting

such a hearing. The Court concludes Petitioner was deprived of process, and "the outcome of the proceeding" was directly "affected" by the deprivation. *Colmenar v. I.N.S.*, 210 F.3d at 971.

The Court next considers Petitioner's claim that his due process right to be represented by counsel was violated. Although noncitizens in immigration proceedings do not have a Sixth Amendment right to counsel, the Ninth Circuit has repeatedly emphasized that noncitizens still have a due process right to counsel such that "for an applicant to appear pro se, there must be a knowing and voluntary waiver of the right to counsel." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). (collecting cases). The absence of such a waiver which "potentially" prejudices "the outcome of the proceedings…amounts to a violation of due process." *Id.* While the right to counsel is normally discussed in the context of removal proceedings, where it is also enshrined by statute, in the Ninth Circuit, it "is protected as an incident of the right to a fair hearing under the Due Process Clause of the Fifth Amendment," such that "an individual who asserts that he was denied the right to counsel in immigration proceedings is asserting that his right to due process was violated." *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018).[1] The due process right applies more broadly to immigration proceedings[2] and specifically to bond hearings, where the most elemental of liberty interests – the interest in being free from physical detention by one's own government," is at stake. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

---

[1] For more Ninth Circuit precedence locating the right to counsel in the Fifth Amendment Due Process Clause, *see Vasquez Perdomo v. Noem,* 790 F. Supp. 3d 850, 878 (C.D. Cal. 2025), appeal dismissed sub nom. *Perdomo v. Noem*, No. 25-4312, 2025 WL 4053187 (9th Cir. Nov. 21, 2025) (collecting Ninth Circuit cases holding that noncitizens have a right to be represented by counsel at no expense to the government that is "rooted" in the Due Process Claude).

[2] The applicability of this right to non-removal proceedings before Immigration Judges is also supported by the regulations that implement the statutory right to counsel, which provide that "[t]he alien may be represented in proceedings before an [IJ] by an attorney or other representative of his or her choice in accordance with 8 CFR part 1292, at no expense to the government." 8 C.F.R. § 1003.16(b) (emphasis added).

Here, Petitioner's was deprived of his due process based right to counsel. Petitioner was not given the opportunity and did not knowingly and voluntarily waive the right to counsel." *Tawadrus,* 364 F.3d at1103. When the Immigration Judge asked Petitioner if he agreed to the last-minute withdrawal of his counsel, Petitioner answered that he "did not know about that." (DAR.) The Immigration Judge noted that counsel had entered their appearance in "all proceedings," but, despite Petitioner's testimony that he was not aware of the withdrawal, still granted the motion to withdraw after Petitioner stated he had hired the attorney for "asylum." (*Id.*) After Petitioner's attorney withdrew at the start of the bond hearing, Petitioner was not advised of his right to seek counsel, was not offered time to seek an attorney, and was not asked if he was willing to proceed pro se These facts together amount to a violation of Petitioner's due process and specifically his right to counsel. *See Tawadrus,* 364 F.3d at 1103, 1103-05 (finding a due process violation in removal proceedings where "the IJ neither advised [Petitioner] of the right to counsel at the time his original attorney withdrew, nor inquired whether [Petitioner] wished to waive this right"); *cf. Singh v. Warden of Golden State Annex Facility*, No. 1:26-cv-00172-JLT-EPG, 2026 WL 1328508, at *5 (E.D. Cal. May 13, 2026) (finding the bond hearing was adequate when "(1) Petitioner was advised of his right to counsel at the outset of the bond hearing; (2) Petitioner stated he understood his right to have counsel present at the bond hearing; (3) Petitioner was asked if he intended to represent himself at the bond hearing and he answered in the affirmative; and (4) Petitioner never mentioned to the immigration court that he was represented by counsel nor that he wished to have counsel represent him at the bond hearing.")

This deprival prejudiced proceedings. The exchange between Petitioner and the Immigration Judge immediately following counsel's withdrawal illustrates Petitioner's inability to understand proceedings pro se. The Immigration Judge stated that the Department of Homeland Security (DHS) had submitted two I-213s and a RAP

sheet and asked Petitioner if he opposed entering the evidence into the record. (DAR.) However, Petitioner was unable to understand the question:

> IJ: Do you have any opposition to those documents submitted by the government, sir?
>
> Petitioner: Uh, opposition, uh, what do you refer to?
>
> IJ: Are you opposed that they be admitted into the record, sir? So I could consider it?
>
> Petitioner: Hmmm.
>
> IJ: It's a yes no question
>
> Petitioner: I don't understand the question.
>
> IJ: Sir, the government is trying to submit documents for their position. Do you oppose me admitting those documents into the record?
>
> Petitioner: Yes.
>
> IJ: Yes, you opposed, or yes, I can admit them?
>
> Petitioner: It's fine.
>
> IJ: What is fine, sir? You've got to tell me: do you oppose or not oppose?
>
> Petitioner: Can I ask the interpreter a question?
>
> IJ: No, if you have a question, you'll make it to me.
>
> Petitioner: What you're talking about, uh, what do you mean? I did not understand that well . . .Your Honor, I, I didn't understand well the question. Are you telling me if I have any documents in this country? I do have documents; they gave me from my asylum. I do have my work permit for five years. I do have my driver's license.
>
> IJ: No, sir, that's not what I'm asking you. In this case, listen to me carefully. The government has submitted documents. In this case, for the bond. related to your immigration history and your criminal history. Do you oppose me admitting these documents into the record? Yes or no.
>
> Petitioner: Yes, sir. Yes. Yes.

> IJ: Yes, you oppose, or yes, I can admit them? You're not being clear, sir.
>
> Petitioner: Yes, I permit – to be admitted.

(DAR.) To quote the Seventh Circuit, ultimately, the "problems surrounding the withdrawal so contaminated this hearing that insisting that it continue . . . deprived [Petitioner] of his right to a fundamentally fair hearing." *Gjeci v. Gonzales*, 451 F.3d 416, 422–23 (7th Cir. 2006). After his attorney's withdrawal, Petitioner clearly struggled to understand the Immigration Judge's questions and to grasp the legal proceedings governing his release. As discussed, he did not know in advance that the bond hearing was occurring, he did not know he needed to submit evidence, and he was not prepared to rebut DHS' position on dangerousness. The prejudice resulting from Petitioner's lack of counsel – while perhaps not uncommon among noncitizens proceeding pro se – are especially troubling given that Petitioner did not meaningfully consent to the withdrawal of his existing counsel and was never asked if he waived his right to counsel. In other words, the confusion and lack of preparation resulted not from Petitioner's choice to proceed pro se, but from the denial of his due process right to seek counsel at no expense to the government.

Having found that the bond hearing provided was constitutionally defective, the Court turns to the appropriate remedy. "Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases). Respondents have "now violated [Petitioner's] due process rights twice"; therefore, "the appropriate remedy in this matter is to direct that Respondent release [Petitioner] from custody." *Magatte,* 2026 WL 1454116, at *4. In line with the Court's past cases ordering release where the Government failed to provide the required bond hearing, the Court holds that the appropriate remedy here

Petitioner's immediate release. *See, e.g., Rodriguez Bustillo v. Andrews*, No. 1:26-cv-05737-DJC-AC, 2026 WL 2225717, at *1 (E.D. Cal. Aug. 3, 2026) (explaining that a delay in providing a bond hearing "violates Petitioner's due process rights and justifies release."); *Feng v. Lyons*, No. 1:26-cv-00235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (holding that "Petitioner's lengthy detention without the process afforded to him under 8 U.S.C. § 1226(a) warrants release" where "the Government intentionally chose to deny Petitioner the right to a bond hearing, and there is no indication before the Court of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community).

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 11) is GRANTED as to Count 4.[3]

2. Respondents are ORDERED to immediately release Petitioner Omar Hernandez Hidalgo from their custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

[3] In the interest of judicial economy, this Court does not address Petitioner's other claims for relief.

3. The Clerk of the Court is directed to serve California City Detention Facility with a copy of this Order.

4. The Clerk of the Court is also directed to close this action. This order resolves all pending motions.

IT IS SO ORDERED.

Dated: **August 28, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC-10-Hidalgo-126-cv-04755.merits